UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br>    *Plaintiff*, <br> <br>   *vs.* <br> <br> DONALD HAMILTON, <br>    *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 1:12-cr-49-JMS-DML-01 |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant Donald Hamilton has been indicted for one count of health care fraud, five counts of false statements, and two counts of money laundering. [Dkt. 1.] Presently pending before the Court is Mr. Hamilton's Motion to Dismiss the Indictment. [Dkt. 22.] Mr. Hamilton argues that the Indictment is deficient because the proscribed conduct is too vague and an exception in the Medicaid rules applies to him. Mr. Hamilton also challenges various assertions in the Indictment and argues that they are misrepresentations of fact and law. For the following reasons, the Court denies Mr. Hamilton's motion.

**I.**
**STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 12(b) provides that a party "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." A motion that alleges a defect in an indictment must be brought before trial, unless it challenges the Court's jurisdiction or argues that the indictment does not state an offense. Fed. R. Crim. P. 12(b)(3)(B).

"Indictments are reviewed on a practical basis and in their entirety, rather than in a hyper-technical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). Allegations in an

indictment are accepted as true, *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009), and an indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions, *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010); *see also* Fed. R. Crim. P. 7(c)(1).  An indictment is reviewed on its face, regardless of the strength or weakness of the Government's case.  *White*, 610 F.3d at 958.  An indictment that follows the words of a statute to state the elements of a crime is generally acceptable.  *Id.* at 958-59.  "While there must be enough factual particulars so that the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *Id*. at 959.

The Court may resolve pretrial motions regarding a defense if it involves questions of law rather than fact; however, if the pretrial claim is substantially intertwined with the evidence of the alleged offense, the subject of the motion falls within the province of the factfinder.  *United States v. Yasak*, 884 F.2d 996, 1002 n.3 (7th Cir. 1989).  "It has long been accepted that the Government need not frame an indictment to include facts negating exclusionary conditions."  *United States v. Spalding*, 2002 U.S. Dist. LEXIS 7789, *6 (S.D. Ind. 2002) (citing *McKelvey v. United States*, 260 U.S. 353, 357 (1922)).

## II.
### BACKGROUND

**A.  Indiana Medicaid Program**

The 2010 Indiana Health Coverage Programs Provider Manual (the "2010 Provider Manual") required makers of certain types of durable medical equipment to submit claims for reimbursement in a method known as manual pricing. [Dkt. 27-1 at 1.]  Payment for manually priced items was specific to the item being billed, and to receive payment, a provider "must submit

documentation supporting the cost of the item, including a listing of all materials." [*Id.*] If the provider submitted a copy of its own retail price list or an invoice from its company indicating the price it charges the general public, it would be reimbursed at 90% of invoice or price list, not to exceed the billed amount. [*Id.*]

A bulletin issued on August 10, 2010, informed providers that effective September 24, 2010, manually priced items

> will require a cost invoice with the claim. A cost invoice is an itemized bill issued directly from the seller of the supply to the provider listing the goods supplied and stating the sum of money due to the supplier. Retail invoices or invoices custom generated by the provider that include the price of the goods plus the provider's margin will no longer be accepted.
>
> \*\*\*
>
> Note: Providers that are creating or manufacturing custom-molded items specific to an individual member's needs, such as a custom-molded seating system produced in house, may continue to submit a retail invoice for processing the claim. The item should be identified as "custom" in the description field on the attached invoice.

[Dkt. 27-2 at 1.]

The August 2010 bulletin was clarified by a bulletin issued on September 14, 2010, providing that manually priced items

> will require a cost invoice to be submitted with the claim in conjunction with the retail invoice for claim adjudication. A cost invoice is an itemized bill issued directly from the seller of the supply to the provider listing the goods supplied and stating the sum of money due to the supplier.

[Dkt. 27-3 at 1.] The September 2010 bulletin also contained the exception for "custom-molded items" and confirmed that "[a] cost invoice is not required" for those items. [*Id.*]

The 2010 Provider Manual defined customized items as "equipment uniquely constructed or substantially modified to meet the specific needs of an individual patient." [Dkt. 27-4 at 1.] It provided that "[s]uppliers must submit documentation of the costs of the item, including the cost

of labor and types of materials used in customizing the item. They must attach a materials and labor itemization and a manufacturer's cost invoice to the claim when submitted for payment." [*Id.*] The 2010 Provider Manual further provides that "[s]ome items, while individually constructed, may have standard costs and charges. Providers can most often identify and bill these items using existing [applicable] codes, and the items are not considered custom equipment." [*Id.*]

The September 2011 Indiana Health Coverage Programs Provider Manual ("2011 Provider Manual") provides that for dates of service prior to July 1, 2011, "the payment amount for the manually priced nonspecific code is based on individual consideration of the item." [Dkt. 23-2 at 1.] "If the provider did not manufacture the item, the provider submits a retail invoice with the claim [and will be reimbursed] at 90% of retail cost." [*Id.*]

### B. Allegations in Indictment[1]

According to the Indictment, Compression Etc., Inc. ("Compression") is an Indianapolis business engaged in providing gradient compression stockings to the public. [Dkt. 1 at 3.] Hamilton Medical Incorporated ("HMI") was formed in 1993 but was a dormant business from 2006 until March 2011 when Compression began using it as a purported manufacturer and supplier of gradient compression stockings. [*Id.*] HMI existed only as a private post office box in Indianapolis. [*Id.*] Mr. Hamilton is the controlling owner of both Compression and HMI. [*Id.*]

Compression became an enrolled Indiana Medicaid provider in 1996. [*Id.*] As part of its normal business, Compression ordered gradient compression stockings from Gottfried Medical ("Gottfried") for approximately $52 per stocking. [*Id.*] Compression charged $175 per stocking

---

[1] The Court will accept the facts as alleged in the Indictment as true, as it must for purposes of reviewing Mr. Hamilton's motion. *Moore*, 563 F.3d at 586. The Court will not rely on the facts presented by the Government in its brief, [dkt. 27 at 4], because they are not supported with any citations and appear to contain material information not alleged in the Indictment.

on average but submitted, and was paid, claims through Indiana Medicaid that were higher than $175 per stocking. [*Id.* at 4.]

Beginning on September 24, 2010, Compression was required to submit the manufacturer's invoice with its reimbursement claims to Indiana Medicaid; however, Compression never included a Gottfried invoice with its claims. [*Id.*] Instead, around December 2010, Compression sent "invoices" to Indiana Medicaid representing that HMI was the manufacturer and supplier of gradient compression stockings. [*Id.*] The HMI invoices listed a manufacturer's price that was typically three times what Compression was actually charged by the true manufacturer, Gottfried. [*Id.*] From September 24, 2010, through June 30, 2011, Compression was paid $1,774,937.14 by Indiana Medicaid for gradient compression stockings. [*Id.*] This money was deposited into Compression's general business account at a financial institution that conducts business in and affects interstate commerce. [*Id.*]

The Indictment alleges that Mr. Hamilton was involved in a scheme to defraud a health care benefit program from at least September 2010 through June 30, 2011. [*Id.* at 4-5.] As part of this scheme, Mr. Hamilton allegedly submitted claims for gradient compression stockings that contained false and misleading manufacturer's invoices; used HMI to create invoices making it appear that HMI was the manufacturer of the stockings, not Gottfried; and submitted documentation stating that Compression provided customization services that were not actually provided. [Dkt. 1 at 5.] As a result of this alleged scheme, Mr. Hamilton was charged with one count of health care fraud, five counts of false statements, and two counts of money laundering. [*Id.* at 6-9.] Mr. Hamilton has moved to dismiss the Indictment. [Dkt. 22.]

## III.
## DISCUSSION

Mr. Hamilton presents multiple arguments, which will be restated as follows. First, Mr. Hamilton argues that the Indictment must be dismissed because the 2010 Provider Manual and applicable bulletins are too vague to define the proscribed conduct because a reasonable person could believe that the custom-equipment exception applied to Mr. Hamilton's conduct. [Dkt. 23 at 4-8.] Second, Mr. Hamilton contends that various assertions in the Indictment are misrepresentations of law and fact. [Dkt. 23 at 8-13.] The Court will address these arguments in turn.

### A. Void for Vagueness Argument

Mr. Hamilton argues that the 2010 Provider Manual and applicable bulletins were so vague that he could not have known what conduct was proscribed. [Dkt. 23 at 4-8.] He focuses on what he perceives to be vague requirements of the Indiana Medicaid Program and argues that the custom-equipment exception set forth in the August and September bulletins relieved him of the requirement to submit a manufacturer's cost invoice. Mr. Hamilton also points to a section of the September 2011 Provider's Manual that provides that prior to July 1, 2011, if the provider did not manufacture the item then it should submit a retail invoice with its claim and it would be reimbursed at 90% of retail cost. [Dkt. 23-2 at 1.] Mr. Hamilton argues that because Compression did not manufacture the stockings, the September 2011 Provider's Manual confirms that he only needed to submit a retail invoice for the claims submitted prior to July 1, 2011. In sum, Mr. Hamilton asks how he could have been "given fair notice that he was now required to submit a manufacturer's cost invoice with his retail invoice when not only was a specific exception made thereto, but this exception was specifically confirmed in the Health Care Provider Manual covering dates of services prior to July 1, 2011." [Dkt. 23 at 6 (citing dkt. 23-2 at 1).]

The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Schultz,* 586 F.3d 526, 531 (7th Cir. 2009). Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. *United States v. Warner*, 498 F.3d 666, 697 (7th Cir. 2007). Again, an indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions, *White*, 610 F.3d at 958; *see also* Fed. R. Crim. P. 7(c)(1).

Based on the applicable standard of review, the Court concludes that Mr. Hamilton has not shown that the Indictment is void for vagueness. Mr. Hamilton has been charged with one count of health care fraud, five counts of false statements, and two counts of money laundering. [Dkt. 1 at 6-9.] He does not specifically cite or challenge any of the statutes under which he has been charged, 18 U.S.C. §§ 1035, 1347, 1957, and he does not dispute the Government's argument that the allegations in the Indictment support the crimes for which he has been indicted, [*see* dkt. 27 at 5-7 (Government's recitation of elements of charged crimes and numbered paragraphs of Indictment supporting charged crimes)]. He does not argue that the Indictment fails to state all of the elements of the crime charged, fails to adequately inform him so that he may prepare a defense, or does not allow him to plead the judgment as a bar to any future prosecutions.

Instead, Mr. Hamilton relies exclusively on what he perceives to be the vagueness of a potentially applicable exception—the custom-molded items exception. It has long been accepted, however, "that the Government need not frame an indictment to include facts negating exclu-

sionary conditions." *Spalding*, 2002 U.S. Dist. LEXIS 7789 at *6.  Despite this well-settled principle, the Indictment does allege that Mr. Hamilton "submitted documentation to Indiana Medicaid which stated that Compression provided customization services which were not actually provided."  [Dkt. 1 at 5.]  This allegation must be accepted as true for purposes of ruling on this motion, and it implicitly alleges that the exception at issue does not apply to Mr. Hamilton's conduct.

Moreover, it would be improper for the Court to resolve the applicability of Mr. Hamilton's exception defense at this stage of the proceedings.  *Yasak*, 884 F.2d at 100.  Likewise, Mr. Hamilton's argument that the September 2011 Provider's Manual contradicts the previously issued bulletins and illustrates the vague nature of the proscribed conduct goes to the heart of his defense and is a question reserved for the fact finder.  *Id.*  For these reasons, the Court rejects Mr. Hamilton's argument that the Indictment is void for vagueness.  While Mr. Hamilton is free to pursue his defense at trial, it would be improper for the Court to resolve the issues he presents at this stage of the proceedings.

### B.   Alleged False Statements of Law or Fact[2]

Mr. Hamilton argues that the Indictment contains several false statements of law and fact. [Dkt. 23 at 8-12.]  First, Mr. Hamilton takes issue with a portion of Paragraph 7 of the Indictment, which the Court has italicized below, providing that "Indiana Medicaid regulations provide

---

[2] Although Mr. Hamilton argued in his opening brief that the Indictment contains false statements of law or fact, he failed to reply to the Government's response arguing why it did not. [*See* dkt. 30 (replying exclusively to vagueness arguments).]  Mr. Hamilton's failure to reply on this issue is enough for the Court to find that Mr. Hamilton has waived his argument.  *See United States v. Thompson*, 286 F.3d 950, 970 (7th Cir. 2002) (holding that failure to file reply brief challenging argument laid out in Government's response brief constitutes waiver); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (holding that defendant's failure to reply to a portion of the Government's argument when given opportunity constitutes waiver of that issue). Out of an abundance of caution, however, the Court will summarily address Mr. Hamilton's argument.

that a provider of gradient custom stockings of the type being supplied by Compression Etc. Inc. cannot charge Indiana Medicaid more than that provider *charges the general public for the same item*." [Dkt. 23 at 8 (referencing dkt. 1 at 3) (emphasis added).] Mr. Hamilton cites the August 2010 Provider Manual for the proposition that "[p]roviders must not bill more than their usual and customary charge for any item," [dkt. 23-3 at 1], and emphasizes that it does not reference charges to the general public, [dkt. 23 at 8-10].

As the Government points out, however, the Medical Provider Agreement Mr. Hamilton had to sign for Compression to participate in the Indiana Medicaid program confirms that by participating in the program, Compression agreed to "submit timely billing . . . in an amount no greater than Provider's usual and customary charge *to the general public* for the same service." [Dkt. 27-5 at 2 (emphasis added).] Moreover, the 2010 Provider Manual that Mr. Hamilton cites also confirms that a provider submitting its own retail price list or invoice from its company "indicates the price that a provider charges *the general public* for products or supplies." [Dkt. 27-1 at 1 (emphasis added).] Therefore, the Court rejects Mr. Hamilton's argument that Paragraph 7 of the Indictment contains a false statement of law.

Mr. Hamilton also argues that the Indictment contains three false statements of fact. [Dkt. 23 at 10-13.] Specifically, Mr. Hamilton contends that Paragraph 10 of the Indictment erroneously alleges that he submitted invoices representing that HMI was the manufacturer when HMI's invoices do not expressly state that; that Paragraph 12 of the Indictment confirms that he was billing private insurers the same as Indiana Medicaid; and that Paragraph 19 of the Indictment creates the impression that Mr. Hamilton "was not engaged in working with each patient to properly create a stocking that would fit them." [*Id.*] As Mr. Hamilton concedes with respect to at least some of these arguments, [dkt. 23 at 12], and as the Government argues in its response

brief, [dkt. 27 at 10], these issues of fact are issues for the fact finder that are not appropriate for the Court to resolve on a motion to dismiss an indictment.  Again, Mr. Hamilton is free to present his defenses at trial; however, the Court will not resolve them at this stage of the proceedings.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant Donald Hamilton's Motion to Dismiss Indictment.  [Dkt. 22.]

08/14/2012

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Kathryn Y. Dinardo
HAMMERLE LAW OFFICE
kate@hammerlelawoffice.com

Robert W. Hammerle
HAMMERLE LAW OFFICE
robert@hammerlelawoffice.com

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov